Filed 6/9/15  American Home Assurance Co. v. 99 Cents Only Stores CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>99 CENTS ONLY STORES et al.,<br><br>Defendants and Respondents. | B248688<br><br>(Los Angeles County<br>Super. Ct. No. BC451795) |

APPEALS from judgments and orders of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Reversed in part, affirmed in part and remanded.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Geni K. Krogstad, Lejf E. Knutson and Michael Claiborne for Plaintiffs and Appellants.

Morgan, Lewis & Bockius and Jason B. Komorsky for Defendant and Respondent Toys 'R' Us—Delaware, Inc.; Patterson Law and Kathleen J. Patterson for Defendants and Respondents Dream Team Solutions, Inc. doing business as Dream Team Staffing and Coneybeare, Inc.; Darling & Risbrough and Robert M. Yoakum for Defendants and Respondents Michaels Stores Distribution, Michaels Distribution Center and Artistree; The Law Offices of Christopher L. Bauer and Christopher L. Bauer for Defendant and Respondent Coastal Employment; Buchalter Nemer and Joshua Mizrahi for Defendant and Respondent Soex West USA, Inc.; Nassiri & Jung and Andrew R. Kislik for

Defendant and Respondent Puretek Corporation; Law Offices of Maxwell E. Lin & Associates and Maxwell Lin for Defendant and Respondent Acme Furniture Industry, Inc.; Law Offices of David Beerman & David Mark Beerman for Defendants and Respondents Ap & Co., Inc., doing business as On Call Staffing Services, Quality Staffing Solutions, Inc., King Meat, Inc., Frontier Logistics Services, 99 Cents Only Stores, Imperial CFS, Inc., Hufcor California Inc. and Chick Packing of California, Inc.; and Law Offices of Tina M. Barberi and Tina M. Barberi for Defendants and Respondents Cal Pay Services, Inc., Easy Living, Inc., Gootgeld Enterprises, Inc. doing business as Molly Maid of San Marcos, L.D., Serna Enterprises, Inc. doing business as Molly Maid of Del Mar-La Jolla, Leland Rebensdorf, Primo Corp., TJ's Theater and Ramsey One.

Ward & Ward and Alexandra S. Ward for Defendant and Respondent IDS USA West, Inc. formerly known as Warehouse Technology.

Medel Law Group and Eric J. Medel for Defendant and Respondent Job Finders Employment Service Co.

Doll Amir & Eley, Gregory L. Doll and Ronald St. Marie for Defendants and Respondents Busy Bee Janitorial Services, Inc. and Zampell Refractories, Inc.

Tredway, Lumsdaine & Doyle, Matthew L. Kinley and Jennifer A. Lumsdaine for Defendant and Respondent C.D. Container, Inc.

Dykema Gossett and Brian H. Newman for Defendant and Respondent The Euclid Chemical Co.

California Department of Industrial Relations, Harold L. Jackson, Christopher G. Jagard, Steven A. McGinty and Jessica Pirrone, for Defendants and Respondents Christine Baker, Director of the State of California Department of Industrial Relations and Trustee of the Uninsured Employers Benefits Trust Fund and the Uninsured Employers Benefits Trust Fund.

_____

American Home Assurance Company, National Union Fire Insurance Company of Pittsburgh, PA and Illinois National Insurance Company (collectively Insurers) issued

2

workers' compensation policies to Optima Staffing, Inc. for 2008 and 2009 based in part on Optima's representation it was a temporary staffing agency that directly hired, trained and supervised employees deployed as temporary workers in various industries and not a professional employer organization, which provided administrative services and procured workers' compensation insurance on behalf of client employers for employees that Optima did not directly hire, train or supervise. After defending and indemnifying 175 workers' compensation claims, the Insurers discovered Optima was operating as a professional employer organization for several temporary staffing agencies and their special employer clients. The Insurers rescinded the policies and filed this action for declaratory relief to confirm the rescission and for restitution from the temporary staffing agencies and the special employers.[1] The Insurers appeal from the judgments entered after the trial court sustained without leave to amend the demurrers of several of the temporary staffing agencies and special employers and subsequently granted motions for judgment on the pleadings in favor of the remaining temporary staffing agencies and special employers.[2] We reverse the judgments and the orders dismissing the causes of action for declaratory relief and unjust enrichment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Allegations of the Second Amended Complaint*

The operative second amended complaint alleged Optima applied for workers' compensation insurance in November 2007, utilizing an application for temporary staffing companies. In the application Optima represented its hiring practices included requiring employment applications, verifying prior work history and interviewing candidates. Optima further represented neither it nor any of its customers or clients "is, or conducts business as or with, a 'professional employer organization' . . . , an 'administrative service organization . . . , a long-term temporary staffing company or

---

[1]     The Insurers have not, and represent they will not, seek to recover from the injured workers directly or to terminate any agreed-upon benefits to them.

[2]     Optima is not a party to this appeal.

3

arrangement, an employee leasing company or arrangement, or a similar type of business or arrangement whereby a company provides certain integrated business services to its customers or clients (such as management of human resources, employee benefits, payroll and/or workers' compensation) for a fee . . . .'"

The Insurers issued a proposal stating that issuance of any workers' compensation policy was conditioned upon Optima providing temporary staffing services only and not performing as a professional employer organization or employee leasing business. Optima accepted the proposal, and a binder for insurance was issued including the same condition. Policies were subsequently issued for the policy period February 22, 2008 through February 22, 2009. (Separate policies were issued for claims under different state laws.)

In February 2009 Optima again applied for workers' compensation insurance, making similar representations about the nature of its business as it had with its initial application. One of the previous policies was renewed and three new policies issued, again contingent on Optima operating as a temporary staffing agency, for the policy period February 22, 2009 to February 22, 2010. Those policies were cancelled effective July 28, 2009 because Optima failed to provide collateral as required under a separately executed payment agreement.

After defending and indemnifying 175 workers' compensation claims at a cost in excess of $1 million, the Insurers discovered Optima, notwithstanding its representations to the contrary, was a professional employer organization, procuring workers' compensation insurance for employees of various temporary staffing agencies and, in some cases, for the employees of special employers working with the temporary staffing agencies.[3] Those employers gave Optima notice of their employees' workers'

_____

3     "A 'special employment' relationship arises when an employer lends an employee to another employer and relinquishes to the borrowing employer all right of control over the employee's activities. [Citation.] The borrowed employee is '"held to have two employers—his original or 'general' employer and a second, the 'special' employer."' [Citations.] In this dual employer situation, the employee is generally limited to a statutory workers' compensation remedy for injuries he receives in the course of his

4

compensation claims; and Optima, in turn, tendered those claims under the insurance policies. Because Optima had no supervision or control over the employees, the operative complaint alleged, it greatly expanded the risk of workers' compensation claims.

By late December 2010 the Insurers had notified Optima that they had rescinded all workers' compensation policies. On January 10, 2011 the Insurers filed a first amended complaint against Optima, the temporary staffing agencies and the special employers.[4] The first cause of action against all defendants sought declaratory relief regarding rescission; the second, third and fourth causes of actions for breach of contract, fraud and negligent misrepresentation were asserted against only Optima; and the fifth cause of action for quantum meruit was asserted against the temporary staffing agencies and the special employers.

After demurrers to the fifth cause of action were sustained with leave to amend, the Insurers filed the operative second amended complaint adding additional defendants and allegations addressing the trial court's rulings. The amended complaint also added a sixth cause of action for unjust enrichment against the temporary staffing agencies and special employer defendants, seeking to recover workers' compensation benefits and settlement proceeds with respect to the defense and indemnity of the 175 workers' compensation claims.

employment with the special employer; he may not bring a separate tort action against either employer." (*Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1247-1248.)

[4]     The complaint also named John C. Duncan as former Director of the State of California, Department of Industrial Relations, and Trustee of the Uninsured Employers Benefits Trust Fund (Christine Baker succeeded Duncan in May 2012), as well as the Uninsured Employers Benefits Trust Fund itself. As the operative complaint alleged, the Uninsured Employers Benefits Trust Fund, created pursuant to Labor Code section 62.5, subdivision (b), to pay workers injured while employed by uninsured employers, may be liable for claims tendered by injured workers whose employers erroneously believed they had valid workers' compensation insurance through Optima.

2. *The Rulings Sustaining Demurrers to the Second Amended Complaint and Motions for Judgment on the Pleadings*

Although most of the temporary staffing agencies and special employers answered the amended complaint, on October 14, 2011 two temporary staffing agencies demurred on grounds including there could be no rescission of the insurance policies as to them because they were not parties to the agreements between the Insurers and Optima and a contract cannot be rescinded when the rights of others have intervened and rescission would harm them. The agencies argued they had reasonably relied on the workers' compensation policies procured by Optima and, in turn, had entered into agreements with special employers to provide temporary workers.

The trial court sustained the demurrers without leave to amend. With respect to the declaratory relief claim, the court explained the Insurers were not entitled to rescission "against one who is not a party to the agreement." Additionally, the rights of the 175 employees who had submitted claims had intervened, and rescission would cause them to suffer prejudice. Regarding the sixth cause of action, the court explained unjust enrichment is not a cause of action; but, even properly viewed as a claim for restitution, it nevertheless failed because the amended complaint lacked any allegation the temporary staffing agencies had engaged in wrongdoing. The court further held restitution and quantum meruit (the fifth cause of action) are quasi-contract remedies that are not available when there is a binding agreement defining the parties' rights as the insurance agreements did in the instant case.

After notice of entry of the order sustaining the demurrers without leave to amend was served, the other temporary staffing agencies and special employers filed motions for judgment on the pleadings (or joinders) asserting the successful demurrer arguments. After the first set of motions was granted, the Insurers moved for leave to file a third amended complaint, splitting the declaratory relief cause of action into three separate causes of action (to respond to concerns raised by the trial court during oral argument on the demurrers) and seeking to add a seventh cause of action for equitable subrogation

6

against the temporary staffing agencies and special employers. The motion was denied. Judgments of dismissal were entered on February 28, 2013 and April 24, 2013.

## DISCUSSION

### 1. *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer or granting of a motion for judgment on the pleadings, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; see *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer [or motion] as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 ["'[a] motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action'"].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

### 2. *The Second Amended Complaint Adequately States a Claim for Rescission*

#### a. *Law generally governing rescission*

An insurer may rescind an insurance contract when the insured has misrepresented or concealed material information, even unintentionally, in obtaining insurance coverage. (See Ins. Code, §§ 331 [concealment], 359 [false representation]; *Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151, 157 ["injured party may rescind, even though the misstatements 'were the result of negligence, or, indeed, the product of

7

innocence'"]; see generally, Civ. Code, § 1689, subd. (b).)[5] To effect rescission, the insurer must give notice to the insured and refund all premiums received before commencement of an action on the contract.[6] (Ins. Code, § 650; Civ. Code, § 1691 [governing rescission generally]; see *Allstate Ins. Co. v. McCurry* (1964) 224 Cal.App.2d 271, 273-274 ["For the right of the insurer to rescind a contract of insurance to be restricted under this section it is necessary that an action on the contract be brought by a party to the contract. An action by a third party against an insured for injuries received in an accident with the car of the insured is not an action upon the contract of insurance."].) After rescission has been effected, the insurer may bring an action for declaratory or other relief to enforce it. (See Civ. Code, § 1692; *West Coast Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 183-184 [life insurer brought declaratory judgment action against beneficiary to establish no benefits payable after rescinding policy for fraud committed by deceased insured].) "In any such action, the trial court will determine not only whether rescission was effected but also whether it was justified, and thereafter grant appropriate relief." (*Little v. Pullman* (2013) 219 Cal.App.4th 558, 569.)

When an insurance policy is rescinded, "it is void *ab initio*, as if it never existed." (*Little v. Pullman*, *supra*, 219 Cal.App.4th at p. 568; see *Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 184 ["[i]n other words, defendants, in law, never were insureds under a policy of insurance"]; *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1267 ["'rescission effectively renders the policy totally unenforceable from the outset so that there was never any

---

5      The fact an insurer has required answers to specific questions in an insurance application is usually sufficient to establish materiality as a matter of law. (*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916; accord, *West Cost Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 187.)

6      Although rescission requires the rescinding party to restore to the other party everything of value received under the contract, the operative complaint alleged the Insurers were in the process of determining the extent to which the premiums paid by Optima offset the costs incurred in defending and indemnifying the claims (more than $1 million).

coverage and no benefits are payable'"]; see generally Civ. Code, § 1688 ["contract is extinguished by its rescission"].)[7] Consequently, in addition to the refund of premiums by the insurer, the insured must return any advance payments that have been received. (*Imperial Casualty & Indemnity Co.*, at p. 184.) In contrast, the cancellation of a policy terminates coverage only prospectively. (*Id.* at p. 182.)

Rescission applies to all insureds under the contract, including additional insureds, unless the contract provides otherwise. (Ins. Code, § 650.) When an insurer rescinds a policy "in conformity with all of the requirements imposed by law [citation], the insurer generally may avoid liability on the policy . . . to any third party injured by the insured." (*Philadelphia Indemnity Ins. Co. v. Montes-Harris*, *supra*, 40 Cal.4th at p. 157.)

b. *The Insurers are not required to seek reimbursement from the injured workers who received benefits to state a claim for rescission*

Defendants contend the Insurers' rescission claim fails because, by declaring they do not intend to seek reimbursement from the injured workers or to terminate previously agreed-upon benefits, the Insurers are not truly seeking rescission. Defendants' argument that rescission is an all or nothing proposition—either the Insurers must seek to recover from the injured workers what they paid to them or the policies remain available for all third party claimants—is without merit. "Rescission is an equitable remedy" (*Gill v. Rich* (2005) 128 Cal.App.4th 1254, 1264), and "[e]quitable relief is by its nature flexible." (*Advanced Micro Devices*, *Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 390.) It would be a perversion of equitable principles to prevent an aggrieved party from seeking relief because it did not want to pursue damages or seek restitution from individuals who are least likely to have the resources to mount a defense.

Indeed, Civil Code section 1692 itself recognizes a contract may be "rescinded in whole or in part." Upon such rescission, "any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any

---

[7] In the case of a material misrepresentation, "the injured party is entitled to rescind the contract from the time the representation becomes false." (Ins. Code, § 359.)

9

other relief to which he may be entitled under the circumstances . . . . [¶] . . . [¶] If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (Civ. Code, § 1692; see *Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 234, 258 ["In an action predicated on fraud, the fact that the parties cannot be restored to the exact *status quo ante* will not prevent a court of equity from granting rescission, especially in the light of section 1692 of the Civil Code. Exercising its equitable powers, the court can adjust the equities of the parties and grant such relief as will achieve substantial justice under the circumstances of the case presented to it."]; cf. *People v. Superior Court* (1973) 9 Cal.3d 283, 286 [in absence of statutory restrictions, "a court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved"].) Moreover, to the extent defendants viewed the injured workers as indispensable parties, they were required to object by demurrer or assert nonjoinder of a party as an affirmative defense and move to dismiss or to compel joinder. (See Code Civ. Proc., §§ 389 [joinder as a party], 430.10, subd. (d) [demurrer].)

c. *Whether the rights of third parties should limit rescission cannot be determined at the pleading stage*

Defendants also contend the Insurers may not rescind the workers' compensation policies because injured employees have already accepted benefits under the policies. This argument is predicated on alternative theories: one requires a finding the injured workers were intended third party beneficiaries and the other requires a finding that, even if not third party beneficiaries, the injured workers' rights have intervened and they will be prejudiced if rescission is permitted.

## i. *The injured workers were not intended third party beneficiaries of the workers' compensation policies*

Civil Code section 1599 permits a third party to enforce a contract before the parties to the contract rescind it if the contract is "made expressly for the benefit" of that third party. (See *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1021 ["'California law permits third party beneficiaries to enforce the terms of a contract made for their benefit'"].) "Moreover, the contracting parties may not rescind or revoke the contract where the 'beneficiary has accepted the benefit or has detrimentally acted in reliance thereon,' or where the 'promisor continues to retain the consideration from the original promisee. . . .'" (*Id.* at p. 1025.)

"'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person.'" (*Spinks v. Equity Residential Briarwood Apartments*, *supra*, 171 Cal.App.4th at p. 1022.) The third person need not be expressly identified in the contract. He or she must simply demonstrate membership in the class of persons for whose benefit the contract was made. (*Id.* at p. 1023.) There is no requirement that both contracting parties intend to benefit the third party. "'[I]t is sufficient that the promisor must have understood that the promise had such intent.'" (*Ibid.*)

As defendants argue, workers' compensation policies are quintessential third party beneficiary contracts. (See Ins. Code, § 11651 [workers' compensation policies "shall contain a clause to the effect that the insurer will be directly and primarily liable to any proper claimant for payment of any compensation for which the employer is liable, subject to the provisions, conditions and limitations of the policy"].) But the issue is not whether workers' compensation policies in the abstract, or at some general level, expressly benefit third parties. The question is whether specific policies were intended to benefit specific classes of employees. Here, the intended beneficiaries of the workers'

11

compensations policies were the direct employees of Optima. Based on Optima's representations, the Insurers clearly did not understand Optima intended that employees of the temporary staffing agencies and special employers would be the beneficiaries.[8] Moreover, Civil Code section 1599 permits third party beneficiaries to enforce the terms of a contract on their own behalf. In the instant case the injured workers are not seeking to enforce the workers' compensation policies or thwart rescission. They have already been paid. To the extent there are injured employees who have not yet submitted claims, they will ultimately be compensated either by their actual employers' policies, if any, or by the Uninsured Employers Benefits Trust Fund. (See *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388-389 ["[i]n 1971, the California Legislature created the [Uninsured Employers Benefits Trust Fund] in order to provide a source of funds for injured workers whose employers have failed or refused either to obtain workers' compensation insurance coverage or to qualify as self-insurers for the employers' liability"].)

> ii. *Whether defendants may be able to prevent rescission because their third party rights have been prejudiced is not grounds for sustaining the demurrer or granting judgment on the pleadings*

Generally, even if not intended beneficiaries, third parties may nevertheless prevent the rescission of a contract—leaving the complaining party to other available remedies—if the third parties' rights "'have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights.'" (*Gill v. Rich*, *supra*, 128 Cal.App.4th at p. 1265, quoting *Beckwith v. Sheldon* (1913) 165 Cal. 319, 324; see *Angle v. United States Fid. & Guar. Co.* (1962)

---

[8] Paragraph 34 of the operative complaint alleged, "Optima operated principally as a PEO and/or provided employee leasing services by agreeing with the Temporary Staffing Defendants and, in some cases, the Special Employer Defendants to provide certain personnel services including, inter alia, workers compensation insurance for the employees of the Temporary Staffing Defendants and Special Employer Defendants, without also obtaining the right to assign or supervise work performed by the employees. Optima therefore had no supervision or control over the employees, thereby greatly expanding the risks inherent in Optima's operations."

201 Cal.App.2d 758, 763; see generally Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2014) ¶¶ 5:159.1 to 5:159.2, p. 5-46.) Defendants contend they purchased workers' compensation insurance for their employees through Optima without any constructive notice of Optima's fraud (that is, that Optima had represented it was not a professional employer organization) and their intervening rights will be harmed if rescission is permitted because the employees they thought were covered by workers' compensation policies may now be able to pursue tort claims against them. (See Lab. Code, § 3602, subd. (d) [employer who "secure[s] the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees" "shall not be subject to civil, criminal, or other penalties for failure to provide workers' compensation coverage or tort liability in the event of employee injury, but may, in the absence of compliance, be subject to all three"]; *InfiNet Marketing Services v. American Motorist Ins. Co.* (2007) 150 Cal.App.4th 168, 178 ["[s]ection 3602, subdivision (d), was enacted 'to allow general and special employers to come to an agreement to ensure that the workers are fully covered by workers' compensation insurance but not to burden both employers with redundant premium payments'"].)

The Insurers, on the other hand, argue, although prejudice to third parties may be an inevitable consequence of rescission, the law clearly provides rescission is binding on innocent additional insureds, third party beneficiaries and injured third parties. (See Ins. Code, § 650; *Philadelphia Indemnity Ins. Co. v. Montes-Harris*, *supra*, 40 Cal.4th at p. 157; *West Coast Life Ins. Co. v. Ward*, *supra*, 132 Cal.App.4th 181 [in action by beneficiary of life insurance policy after insurer rescinded it based on concealment, court found no waiver of rescission].) The Insurers insist it would be incongruous for wholly unrelated third parties to have greater protection than additional insureds, particularly because the special employers had an ongoing obligation to ensure they satisfied their duty to secure workers' compensation coverage. (See Lab. Code, §§ 3711 ["[t]he director, an investigator for the Department of Insurance Fraud Bureau or its successor,

13

or a district attorney investigator assigned to investigate workers' compensation fraud may, at any time, require an employer to furnish a written statement showing the name of his or her insurer or the manner in which the employer has complied with Section 3700"]; 3550, subd. (a) ["[e]very employer subject to the compensation provisions of this division shall post and keep posted in a conspicuous location frequented by employees, and where the notice may be easily read by employees during the hours of the workday, a notice that states the name of the current compensation insurance carrier of the employer, or when such is the fact, that the employer is self-insured, and who is responsible for claims adjustment"].)  The Insurers further argue the cases holding third parties may prevent rescission if their rights are sufficiently injured are distinguishable because, in all of them, the third parties had obtained their rights legitimately whereas any rights defendants had, or thought they had, were predicated on fraud and thus illusory.

We recognize the tension between the principles animating the Insurers' and defendants' positions.  But, as we explained, rescission is an equitable remedy and thus flexible.  Consequently, we cannot categorically say, as the Insurers suggest, an innocent third party may never prevent rescission when that parties' rights, albeit illusory because predicated on fraud, have been prejudiced.  Indeed, the Supreme Court in *Beckwith v. Sheldon*, *supra*, 165 Cal. at page 324, characterizing as "fundamental" the principle injured third parties may prevent rescission, made no such distinction between legitimately and illegitimately derived rights; and we decline to engraft such a limitation onto a fundamental equitable principle.  It cannot, however, be determined at the pleading stage whether the rights of the defendants have been sufficiently prejudiced such that they should be able to prevent rescission.  This is quintessentially a question of fact.  The Insurers have thus properly stated a cause of action for rescission.[9]

---

[9]     Counsel for more than 20 defendants filed a joint respondents' brief, which the remaining defendants joined.  One defendant, IDS USA West, Inc., filed a separate brief in addition to participating in the joint brief.  The only point we need address in IDS USA West's separate brief is its argument, echoing one of the trial court's findings, that rescission cannot be had against non-parties to a contract.  (See *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 549 ["contractual aspects of a complaint seeking

14

d. *Whether the Insurers have waived their right to rescind by failing to promptly investigate Optima's insurability cannot be determined at the pleading stage*

Relying in large part on *Barrera v. State Farm Mutual Auto. Ins. Co.* (1969) 71 Cal.2d 659 (*Barrera*), defendants contend the Insurers have waived their right to rescind the workers' compensation policies because they unreasonably delayed investigating Optima's insurability, waiting more than two and a half years after the first policies were issued and until they had paid more than $1 million in workers' compensation claims. Defendants argue the Insurers had information in their possession, submitted as part of at least one workers' compensation claim, that constituted constructive notice of Optima's fraud.

In *Barrera* the Court held "an automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy." (*Barrera*, *supra*, 71 Cal.2d at p. 663.) If an injured party who has obtained an unsatisfied judgment against the insured proceeds against the insurer, the insurer cannot raise as a defense the insured's concealment or misrepresentation of material information that could have been uncovered in a timely investigation of insurability. (See *id.* at pp. 663, 667 ["evidence suggests that State Farm, in failing to investigate Alves's insurability and to obtain a

_____

rescission of the contract and restitution presuppose that plaintiff and defendant occupy the relationship of vendor and vendee"]; *Leavens v. Sharp* (1944) 66 Cal.App.2d 425, 430 ["appellant was not entitled to a judgment for rescission against one who was not a party to the agreement"].) Although technically correct, it is irrelevant. The Insurers are seeking a declaration that their contracts with Optima have been properly rescinded with the consequence to defendants that employees they thought were covered by workers' compensation insurance pursuant to their separate contracts with Optima were not properly insured. Indeed, the very fact that third parties in some instances may be able to prevent rescission demonstrates that rescission can occur even if it affects nonparties—it is not "had" with respect to them, but merely has effects on them, including the possibility they may be required to pay restitution for unjust enrichment. (Cf. *Super 7 Motel Associates*, at p. 549 ["a broker is a proper party defendant to a fraud claim seeking rescission, and . . . can be held jointly and severally liable for the consequential damage award in that action"].)

15

DMV report, pursued a policy of saving minor costs on its part at the expense and sacrifice of the interests of its insured and those of the general public who were the potential victims of the insured's negligence"].)  "*Barrera*'s recognition of this duty on the part of automobile liability insurers rested on a combination of three public policy considerations:  the quasi-public nature of the insurance business generally; the public policy underlying the financial responsibility law [citation]; and the fact that such a duty is consistent with the extracontractual duty of all insurers to act promptly to accept or reject applications for insurance."  (*Philadelphia Indemnity Ins. Co. v. Montes-Harris*, *supra*, 40 Cal.4th at p. 158.)

Parallels can certainly be drawn between automobile liability insurance and workers' compensation insurance:  "[O]rdinary indemnity insurance . . . primarily protects the insured" (*Barrera*, *supra*, 71 Cal.2d at p. 672), while automobile liability insurance and workers' compensation insurance protect injured third parties.  However, significant distinctions exist as well.  Workers' compensation is governed by an extensive regulatory scheme that places certain burdens and duties on employers, who have the primary responsibility for ensuring that injured workers are compensated; and the Uninsured Employers Benefits Trust Fund provides a safety net in the event an employer has failed to obtain insurance.  In the automobile liability context there is no employer or business subject to regulation that is liable in the first instance for injury to third parties. If an automobile insurance policy is rescinded, an injured third party likely has no recourse.  Thus, "'the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others."'" (*Id.* at pp. 670-671.)  Because of these special concerns, unique to situations involving automobile liability insurance, a number of courts have limited the *Barrera* holding and analysis to that specific context. (See *Fireman's Fund Ins. Co. v. Superior Court* (1977) 75 Cal.App.3d 627, 633 ["a careful reading of *Barrera* and later kindred decisions compels the conclusion that the duty defined in *Barrera* must in any event be limited to

16

automobile liability insurers who deny coverage for reasons arising out of their own negligence"]; see also *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 85, fn. 6 [observing in case involving misrepresentations in application for health insurance, "overriding public policy of protecting injured third parties, which guided the court in [*Barrera*], is not present here"].)

We need not decide whether the duty of prompt and reasonable investigation articulated in *Barrera*—or some variation that is less demanding than *Barrera* but stricter than ordinary forfeiture/waiver principles—is applicable to workers' compensation carriers because, whatever the standard, waiver is an affirmative defense that ordinarily cannot be resolved at the pleading stage. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 33-34 ["'[w]aiver is an affirmative defense, for which the insured bears the burden of proof,' and 'California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished'"]; see also *Barrera*, *supra*, 71 Cal.2d at p. 681 "[w]hether or not the automobile liability insurer has breached its duty to the public to make a reasonable investigation within a reasonable time after the issuance of the policy ordinarily constitutes a question for the trier of fact"]; *DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1265 [although "[w]aiver is ordinarily a question for the trier of fact," it may be determined as a matter of law if there are not disputed facts and only one reasonable inference can be drawn].) Nothing in the Insurers' operative pleading established waiver as a matter of law. Resolution of the issue remains for a finder of fact.

3. *The Insurers Adequately Pleaded a Claim for Unjust Enrichment but Not Quantum Meruit*

Defendants contend there are several reasons the causes of action for unjust enrichment and quantum meruit collectively fail, but do not address the elements of each claim separately. None of their arguments has merit. However, in independently examining the issues, we conclude the cause of action for quantum meruit cannot be maintained.

17

### a. *Unjust enrichment*

#### i. *Governing law*

"The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.' [Citation.] 'The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched.' [Citation.] It is not, strictly speaking, a theory of recovery, '"but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." [Citation.] . . . It is synonymous with restitution.' [Citation.] Ordinarily, restitution is required only if '"the benefits were conferred by mistake, fraud, coercion, or request."'" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132; see *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1316 [if benefits are not conferred by mistake, fraud, coercion or request, "'though there is enrichment, it is not unjust'"].)

#### ii. *There is no valid contract precluding recovery under a quasi-contract theory*

Contending *California Medical Assn. v. Aetna U.S. Healthcare of California* (2001) 94 Cal.App.4th 151, 174 (*California Medical Assn.*) is directly on point, defendants argue the Insurers are not entitled to recover workers' benefits paid to injured workers or expenses incurred in connection with the defense and indemnity of their claims because these costs were incurred pursuant to express contracts between Optima and the Insurers. (*Id.* at p. 172 ["quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights"].) California Medical Association (CMA), the assignee of claims owned by physicians and medical groups (collectively physicians), filed a complaint asserting claims for breach of express and implied contract and breach of third-party-beneficiary contract against several health care insurers to recover payments allegedly owed to the physicians for services provided to enrollees in health care service plans operated by the defendants. There were no direct contracts between the physicians and the defendants. Rather, the

18

physicians had entered into contracts to provide services to certain intermediaries. After the intermediaries became insolvent and failed to pay the physicians, CMA attempted to recover the amounts due on the theory the health insurers had indirectly received a benefit from these payments. The trial court sustained a demurrer to the first amended complaint but granted "leave to amend to attempt to allege a claim for quasi-contract." (*Id.* at p. 157.)

The trial court subsequently sustained the health insurers' demurrer to the second amended complaint, asserting claims including unjust enrichment, without leave to amend. In affirming the trial court's ruling, the court of appeal explained, "'When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract.' [Citation.] Thus, CMA may not proceed on its quasi-contract claim because the subject matter of such claim, to wit, whether Physicians were entitled to compensation from defendants, was governed by express contracts including the Defendant-Intermediary Agreements and Defendant-Enrollee Agreements (as specifically alleged in CMA's second amended complaint) as well as the Intermediary-Physician Agreements (as argued in CMA's opening brief). [Citations.] [¶] Further, the record indicates that CMA is improperly seeking to proceed on a quasi-contract claim only after trying unsuccessfully by its first amended complaint to enforce various express contracts against defendants directly." (*California Medical Assn.*, *supra*, 94 Cal.App.4th at pp. 172-173.) The court also held, "because of the circumstances alleged here, any benefit conferred upon defendants by Physicians was simply an incident to Physicians' performance of their own obligations to Intermediaries under the Intermediary-Physician Agreements." (*Id.* at p. 174.)

Unlike the case at bar, there was no allegation in *California Medical Assn.* that the contracts governing the subject matter of the claim—whether direct or indirect—were void. Here, the very essence of the Insurers' action is that there are no valid and enforceable agreements. Thus, the principle that a plaintiff may not "pursue or recover on a quasi-contract claim if the parties have an *enforceable* agreement regarding a

19

particular subject matter" (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388, italics added) is simply not applicable.  (See *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388 ["restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason"]; *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 203 ["Here, the Insured has alleged the existence and validity of an enforceable written contract between the parties in its first two causes of action.  The Insured then realleges the existence of the written contract in its claim of a quasi-contract.  This is internally inconsistent.  The Insured must allege that the express contract is void or was rescinded in order to proceed with its quasi-contract claim."].)

Similarly misplaced is the argument any benefit conferred on defendants was an incident to the Insurers' performance of their own obligations to Optima as required under the workers' compensation policies.  Even if not void, these policies only provided coverage for direct employees of Optima.  Defendants were not incidental beneficiaries.

   iii. *The operative complaint adequately alleged it would be unjust for defendants to retain the money expended in connection with their employees' workers' compensation claims*

Defendants contend the Insurers failed to plead facts demonstrating it would be unjust for them to retain the benefits they received.  They argue they paid for any benefits—the operative complaint alleged that special employers paid premiums to one or more temporary staffing agencies, which, in turn, paid Optima for a portion of the premiums on the policies—and it was not alleged defendants knew of Optima's fraud.

Like many of defendants' arguments, whether it would be unjust for them to retain the benefits they received—payments made to injured workers on their behalf (see *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51 ["benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss"])—cannot be resolved at the pleading stage.  Although the operative complaint does

20

not allege defendants colluded with Optima or were aware of its fraud,[10] participation in the fraudulent scheme is not required for a claim for unjust enrichment. Restitution may be warranted in cases in which the parties are innocent of wrongdoing, for example, in the case of a mistake of fact. (See *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 78 ["'[a]s a general rule, equitable concepts of unjust enrichment dictate that when a payment is made based upon a mistake of fact, the payor is entitled to restitution unless the payee has, in reliance on the payment, materially changed its position'"].) Indeed, restitution may even be appropriate when the party seeking to recover was negligent in making a payment (*National Bank of California v. Miner* (1914) 167 Cal. 532, 537 ["'[i]t is now settled . . . that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund'"]; accord, *American Oil Service, Inc. v. Hope Oil Co.* (1965) 233 Cal.App.2d 822, 830), and without regard to whether the mistake was mutual or known by the party receiving the payment (*Aebli v. Board of Education* (1944) 62 Cal.App.2d 706, 724.) This case has the added complexity that defendants may be innocent third parties, but the Insurers are also innocent third parties. How equity is best served under these circumstances is a question that can only be resolved after a full development of all the facts. In sum, the operative complaint adequately states a claim for unjust enrichment.

### iv. *Whether the insurance policies demonstrate the Insurers did not suffer injury or waived their right to assert claims against defendants cannot be determined at the pleading stage*

Defendants contend the insurance policies attached as exhibits to the Insurers' proposed third amended complaint demonstrate the Insurers suffered no injury—having received more in premiums than they paid in claims—and that the policies include a waiver precluding the Insurers from asserting claims against the temporary staffing

---

10   The proposed third amended complaint included allegations that some of the defendants were aware of Optima's fraud.

agencies and special employers. The Insurers respond that defendants misconstrue the policies, as well as the allegations of the proposed third amended complaint.

As a threshold matter, because the second amended complaint sufficiently states causes of action for rescission and unjust enrichment, the proposed third amended complaint and documents attached to it are not properly before us.[11]

Even if considered, the insurance policies do not demonstrate the Insurers have not suffered injury as a matter of law. The operative complaint and the proposed third amended complaint allege the Insurers have paid "in excess" of $1 million in claims and may be required to pay additional sums in connection with the 175 workers' compensation claims. One million dollars is the floor, not the ceiling. Moreover, the premiums reflected in the policies (more than $1,850,000) were "deposit premium[s]." As the policies explained, those premiums were estimates: "The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." The final premium calculation would also be affected by any cancellation—as happened in the instant case about five months into the second policy year because of Optima's failure to provide collateral. Thus, it cannot be determined from the operative pleading and the policies whether the Insurers paid more in claims than they collected in premiums.

Similarly unamenable to resolution at the pleading stage is defendants' contention the "Blanket Waiver of Our Right To Recover from Others Endorsement" precludes a cause of action for restitution. The endorsement states, "We have a right to recover our payments from anyone liable for injury covered by this policy. We will not enforce our right against any person or organization with whom you have a written contract that requires you to obtain this agreement from us, as regards any work you perform for such

---

[11] In light of our conclusion the Insurers have properly pleaded a cause of action for unjust enrichment, whether the Insurers should be permitted to file a third amended complaint to also assert a cause of action for equitable subrogation is properly reconsidered in the first instance by the trial court.

person or organization." As previously discussed, the gravamen of the Insurers' action is that the policies were rescinded and consequently void ab initio. If they prevail on that theory, then the blanket waiver is inapplicable. Moreover, there are no allegations in the operative complaint that defendants had a written contract with Optima requiring them to obtain the waiver of subrogation, a condition precedent for the waiver to be activated.

### b. *Quantum meruit*

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458.) '"The measure of recovery in quantum meruit is the reasonable value of the services rendered, provided they were of direct benefit to the defendant."' [Citation.] '[A] plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered *were intended to and did benefit* the defendant.'" (*Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1673; see *Chodos v. Borman* (2014) 227 Cal.App.4th 76, 96-97.) "[W]hen the services are rendered by the plaintiff to a third person, the courts have required that there be a specific request therefor from the defendant: '[C]ompensation for a party's performance should be paid by the person whose request induced the performance.'" (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 249, quoting *Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 515.)

The Insurers have failed to allege—and cannot allege—they defended and indemnified the injured workers pursuant to either an express or implied request for such services from the temporary staffing agencies or special employers and that the services rendered were intended to benefit them. Indeed, the "'theory of quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the

23

facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value.'" (*Day v. Alta Bates Medical Center*, *supra*, 98 Cal.App.4th at p. 248.) The temporary staffing agencies and special employers did not accept the benefits with a full appreciation of the facts, that is, that Optima was not authorized to purchase workers' compensation insurance on behalf of employees who did not work directly for the company. The Insurers cannot state a claim for quantum meruit.

## DISPOSITION

The judgments are reversed as well as the orders dismissing the causes of action for declaratory relief and unjust enrichment. The orders sustaining the demurrer and granting judgment on the pleadings to the causes of action for quantum meruit are affirmed. The cause is remanded for further proceedings not inconsistent with this opinion. The Insurers are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


STROBEL, J.[*]


---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24